UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| REBECCA SCHRYER | : | CASE NO. 3:11CV1250(VLB) |
| | : | |
| v. | : | |
| | : | |
| CAPTAIN ROBERT MARTIN, ET AL. | : | MARCH 6, 2013 |

## RULING GRANTING IN PART AND DENYING IN PART DEFENDANT MARTIN'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Rebecca Schryer, currently confined at York Correctional Institution, commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 against Captain Robert Martin, Lieutenant James Shabenas and Correctional Officer Monty. On November 18, 2011, the Court dismissed the claims against defendants Monty and Shabenas, but permitted the plaintiff thirty days to file an amended complaint provided she could allege the involvement of one or more of the defendants in the alleged use of excessive force and/or deliberate indifference to medical needs. The plaintiff did not file an amended complaint. Thus, the case proceeds as to the claims in the complaint against defendant Martin in his individual capacity. Captain Martin has filed a motion for summary judgment. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

I.  **Standard of Review**

In a motion for summary judgment, the burden is on the moving party to

1

establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed. R. Civ. P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

"Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir.2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson*, 477 U.S. at 248. "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted). The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. *See Dawson v. County of Westchester*, 373

F.3d 265, 272 (2d Cir. 2004).

The Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  *See Patterson v. County of Oneida, NY*, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

II.   **Facts**[1]

On August 6, 2008, at York, Correctional Officers Monty and Rizzuto and Lieutenant Shabenas escorted the plaintiff from the Chronic Discipline Unit to the Cell J-3 in the Restrictive Housing Unit.  After removing the restraints from the plaintiff, Lieutenant Shabenas informed the plaintiff that she must submit to a strip search.  The plaintiff became loud and verbally abusive towards Officer

---

[1] The facts are taken from defendant's Local Rule 56(a)1 Statement along with the attached exhibits and affidavits and the plaintiff's Local Rule 56(a)2 Statement and attached exhibits.  (*See* Docs. Nos. 10-2 through 10-4 and 11.)

Rizzuto and stated that she was not going to submit to the strip search. Lieutenant Shabenas advised the plaintiff that if she failed to comply with the strip-search, she would be placed in in-cell restraints until she chose to comply with the order to be strip-searched. The plaintiff then turned to the window in the outer wall of her cell and punched it.

Lieutenant Shabenas ordered the plaintiff to put her hands behind her back and the plaintiff refused. Lieutenant Shabenas then delivered a burst of First Defense MK-4 into the plaintiff's face. Correctional Officers Monty, Rizzuto and Correctional Counselor Gestay were able to gain control of the plaintiff and secure her on the floor of the cell with leg and wrist restraints. An officer then came with a video-recorder and began to videotape the incident.

Captain Martin supervised the decontamination of the plaintiff in a shower and her placement in cell J-1 in restraints. The plaintiff's medical records reflect that two nurses and a mental health social worker came to the plaintiff's cell to evaluate her medical and mental health within four hours of the alleged use of force by Lieutenant Shabenas, Correctional Officers Monty and Rizzuto and Correctional Counselor Gestay.

After the plaintiff became compliant, Captain Martin ordered officers to remove the handcuffs from the plaintiff's wrists, permit her to shower and provide her with dry clothes. She was then escorted to cell J-4 in the Restrictive Housing Unit.

**III.    Discussion**

Defendant Martin moves for summary judgment on three grounds. He argues that the claims against him are time-barred, he was not involved in the use of force or alleged denial of medical treatment and he was not deliberately indifferent to the plaintiff's safety or medical needs.

**A.    Statute of Limitations**

The limitations period for filing an action pursuant to 42 U.S.C. § 1983 is three years. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (holding that, in Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52-577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). The incident giving rise to this action occurred on August 6, 2008. Thus, the limitations period expired on August 6, 2011. Defendant Martin contends that the claims against him are barred by the statute of limitations because the plaintiff did not file the action until August 8, 2011.

The defense of the statute of limitations is an affirmative defense that is waived if not asserted in response to a pleading. Fed.R.Civ.P. 8(c). The Second Circuit has held that "[a] claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the answer to the complaint." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751-52 (2d Cir. 1992) (citation omitted). Because the defendants' answer to the complaint asserts no defense based upon the relevant statute of limitations,

defendant Martin has waived any possible statute of limitations defense.  *See United States v. Landau*, 155 F.3d 93, 107 (2d Cir. 1998) (finding waiver of defense of statute of limitations when raised in a motion for summary judgment).  The motion for summary judgment is DENIED on this ground.[2]

### B.     Personal Involvement

The plaintiff alleges that defendant Martin was present and ordered the use of pepper spray by Lieutenant Shabenas and also failed to protect her from the use of force by Officers Monty and Rizzuto in bringing her under control after the spray was deployed.  Defendant Martin argues that he was not personally involved in the use of force against the plaintiff.

To recover money damages under section 1983, plaintiff must show that these defendants were personally involved in the constitutional violations.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Captain Martin is a supervisory official.  Martin Aff. ¶9.  He cannot be held liable under section 1983 solely for the acts of his subordinates.  *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

The plaintiff may show supervisory liability by demonstrating one or more

---

[2] Even if the defendant had not waived the statute of limitations defense, it is evident that the complaint was filed within the statute of limitations.  The plaintiff's complaint is dated and the plaintiff has alleged that she mailed it to the court on that date.  A prisoner's complaint is considered filed on the date he or she hands it to prison officials for mailing to the court.  *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (Second Circuit has held that a *pro se* prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[3]  In addition, plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Defendant Martin avers that he was not present at the time that Lieutenant Shabenas deployed pepper spray into the plaintiff's face or when Officers Monty and Rizzuto and Counselor Gestay used force to gain control of the plaintiff and place her in leg and wrist restraints.  Martin Aff. ¶4&5.  Defendant Martin states

---

[3] The Court notes that the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) arguably casts doubt on the continued viability of some of the categories for supervisory liability.  The Second Circuit has yet to definitively "decide[d] which of the *Colon* factors remains a basis for establishing supervisory liability in the wake of *Iqbal* and no clear consensus has emerged among the district courts within the circuit." *Aguilar v. Immigration and Customs Enforcement Div. Of the United States*, 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011) (collecting cases).  Because it is unclear as to whether *Iqbal* overrules or limits *Colon* the Court will continue to apply the categories for supervisory liability set forth in *Colon*.

that he arrived after the plaintiff was under control and was only involved in supervising the decontamination of the plaintiff and her escort to another cell. *See* Def.'s Mem. Support Summ. J., Att. B, Martin Aff. at ¶¶ 5-6.

The plaintiff contends that defendant Martin's Incident Report narrative contradicts his Affidavit and the Incident Report of Lieutenant Shabenas. *See* Def.'s Mem. Support Summ. J., Att. A at 6. In the Incident Report narrative, defendant Martin relates that at 9:40 a.m., he was contacted by a correctional officer who stated that the plaintiff was becoming uncooperative and hostile towards staff. Martin Captain Martin went to investigate these allegations and observed the plaintiff refuse several orders from Lieutenant Shabenas to comply with intake procedures. When Captain Martin approached the plaintiff's cell in an attempt to verbally intervene, the plaintiff became aggressive towards staff members and then Lieutenant Shabenas deployed a chemical agent into the face of the plaintiff. Captain Martin then assumed supervision of the incident. This narrative suggests that Captain Martin was in fact present when the chemical agent was deployed and the plaintiff was brought under control by correctional officers using force. The Court concludes that there is an issue of material fact as to defendant Martin's involvement in the use of force against the plaintiff during the incident at Cell J-3 in the Restrictive Housing Unit. The motion for summary judgment is DENIED on this ground.

C. <u>Deliberate Indifference to Medical Needs</u>

The plaintiff's complaint which is sworn under penalty of perjury includes allegations regarding the conduct of medical personnel in response to her medical condition after the alleged use of excessive force. The plaintiff claims that a nurse gave her a cursory exam after she was placed in handcuffs and leg irons and put in a cell. The plaintiff declares that she could not get up because of her injuries and the fact that she was handcuffed behind her back. She claims that the nurse left her on the floor in a pool of her own blood. Captain Martin and other officers then rinsed the plaintiff off in a shower and escorted her to another cell. The following day someone took a urine sample from her, but she never received the results of the urinalysis. In the days following the alleged assault, the plaintiff experienced heavy bleeding and requested medical treatment verbally and in writing from medical personnel and Captain Martin. The plaintiff claims she received no medical treatment for this symptom. The plaintiff began to experience extreme fatigue, dizziness, disorientation and lack of appetite, but no one at York addressed her symptoms. In November 2008, medical personnel at York transported her to University of Connecticut Health Center for a blood transfusion.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or

the wanton infliction of unnecessary pain by prison personnel. *See Id.* at 104-06. "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation," *Id.*; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

The plaintiff does not dispute that Captain Martin was a correctional supervisor and did not provide medical care to inmates at the time of the alleged use of excessive force. The plaintiff contends that Captain Martin failed to arrange to have her evaluated and treated by medical personnel and interfered in the attempts of medical personnel to assess and treat her injuries.

The plaintiff's medical records reflect that Nurse Susan T. Colier came to the plaintiff's cell at approximately 11:00 a.m., but the plaintiff would not put her hands through the slot in the door of her cell to enable the nurse to see her wrists. *See* Def.'s Mem. Support Summ. J., Att. A at 15. The nurse did not note any visible injuries as she observed the plaintiff through the trap door of the cell. Id. The plaintiff made no complaints about breathing difficulties or injuries to her eyes from the pepper spray. Id.

Approximately forty-two minutes later, a clinical social worker came to the plaintiff's cell to evaluate her mental health. *See* Def.'s Mem. Support Summ. J., Att. C, Clinical Record. The social worker noted the plaintiff's complaints of being assaulted by staff and having a back injury and disc pain. Id. The plaintiff refused to get up from the floor, but requested medical attention and to speak

with the State Police. Id. The social worker concluded that the plaintiff's mental health was stable. Id.

At approximately 1:15 p.m., a different nurse came to the plaintiff's cell to check her restraints. See Def.'s Mem. Support Summ. J., Att. A at 16. The plaintiff complained that correctional staff had stomped on her back and that there was blood in her urine. The plaintiff also related that she had sustained a laceration to her kidney in 2006. The nurse observed red indentations on the plaintiff's wrists from the handcuffs, no breaks in the skin on her wrists and no signs of redness or bruising on the plaintiff's back. Id. The nurse assessed the plaintiff as medically stable and cleared the plaintiff for placement in the restrictive housing unit. Id.

After the nurse had finished her evaluation, she consulted with an advanced practice registered nurse who recommended that she get a urine sample from the plaintiff. See Def.'s Mem. Support Summ. J., Att. C. The nurse brought a cup to the plaintiff, but the plaintiff was unable to produce any urine, so the nurse left the cup at the plaintiff's cell. Id.

It is evident that in the hours following the incident involving the use of pepper spray and physical force to regain control of the plaintiff, the plaintiff related her concerns and complaints about symptoms she experienced to medical and mental health personnel at York. See generally Att. A & C. One of the nurses performed a physical evaluation of the plaintiff and also attempted to get a urine sample during the afternoon of the day of the incident, but the plaintiff

was unable to provide a sample that day. The plaintiff claims that the following day another nurse did take her urine sample for analysis, but medical personnel did not inform her of the results.

The plaintiff's medical records include a notation that the plaintiff went to state court on August 14, 2008. Att. C at 75, 79. A court document indicating that the plaintiff had appeared on criminal charges stemming from her arrest on February 21, 2008, included a hand written notation - "Medical Attention." Att. C at 75. The plaintiff's medical records reflect that medical personnel at York did evaluate her upon her return from court and medically cleared her as of 9:00 p.m. Att. C at 79.

The plaintiff has attached to her Local Rule 56(a)(2) Statement of Material Facts in Dispute, a written request for medical treatment seeking the results of the urine analysis. That request is dated September 7, 2008, a month after the incident, and is not directed to any particular Department of Correction employee.

The plaintiff has submitted no evidence to suggest that Captain Martin was present when the nurses and social worker came to evaluate her after the alleged use of excessive force or that he prevented these individuals or any other medical personnel from treating her. The Medical Incident Reports completed by the two nurses both include a Custody Supervisor signature that appears to be that of Lieutenant Shabenas. The Health Evaluation Report completed by a correctional health nurse and social worker clearly shows the custody supervisor's signature to be that of Lieutenant Shabenas. *See id.* at Att. A at 3, 5,

15-16, 18, 32.

The plaintiff's medical records from August 7, 2008 to November 2, 2008, do not include any complaints of symptoms relating to the injuries she claimed to have suffered due to the use of pepper spray and physical force.  The medical records reflect that medical and mental health personnel treated the plaintiff for her mental health conditions from early August 2008 through December 2008.  On September 16, 2008, the plaintiff underwent a gynecological examination, but did not mention any blood in her urine or unusual bleeding.   It was not until November 3, 2008 that the plaintiff complained of heavy menstrual bleeding.   She told the gynecological nurse that she had experienced some spotting beginning in early August 2008 when she had an altercation with custody staff, but the bleeding had become heavier in the three weeks prior to November 3, 2008.   The nurse ordered blood work. On November 21, 2008, a physician examined the plaintiff due to her complaints of dizziness, increased menstrual bleeding and low back pain.  Based on blood test results reflecting low hematocrit and hemoglobin levels, the physician arranged to have the plaintiff sent to University of Connecticut Health Center for blood transfusions later that day.  The plaintiff returned to York on November 22, 2008 and continued to be treated by a physician and a nurse from the gynecological department.  *See* Att. A.

The Court concludes that the plaintiff has not met her burden of demonstrating deliberate indifference to her medical needs by defendant Martin. Defendant Martin is not a medical doctor or nurse and did not provide medical

treatment to inmates during the time period following the alleged use of excessive force.  There is no evidence to support the plaintiff's allegations that she sought medical treatment from defendant Martin and that he failed to ensure that she received treatment or that he prevented her from receiving treatment from medical personnel at York.  To the contrary, the evidence supports a finding that York staff were attentive to her medical needs and concerns.  Accordingly, the motion for summary judgment is GRANTED as to the claim of deliberate indifference to medical needs as to defendant Martin.

IV.     **Conclusion**

Defendant Martin's Motion for Summary Judgment [Doc. No. 10] is GRANTED as to the Eighth Amendment claims of deliberate indifference to medical needs and DENIED as to the Eighth Amendment claims of use of excessive force or failure to protect from the use of excessive force.

SO ORDERED this 6th day of March 2013, at Hartford, Connecticut.

                                                    _____/s/_____
                                                    Vanessa L. Bryant
                                                    United States District Judge